IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Billy J. Brooks, <br><br> Plaintiff, <br><br> v. <br><br> Anderson Brecon Inc. d/b/a PCI Pharma Services and Tracy Young, <br><br> Defendants. | Case No.: 24-cv-50106 <br><br> Judge Iain D. Johnston |

MEMORANDUM OPINION AND ORDER

Plaintiff Billy Brooks brings this *pro se* employment discrimination suit against PCI Pharma Services ("PCI") and Tracy Young. Defendants moved to dismiss under F.R.C.P. R. 12(b)(6). For the reasons below, the Court grants-in-part and denies-in-part Defendants' Motion.

**Background**

    *a.    Allegations*

The Court takes the following allegations from the Complaint and accepts them as true for the purposes of deciding this Motion. It liberally construes Brooks' pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Kelley v. Zoeller*, 800 F.3d 318, 325 (7th Cir. 2015).

Brooks is a black male who worked at PCI from—at the earliest—June 5, 2022 until his termination on December 7, 2023. Dkt. 1, pg. 4.[1] His Complaint weaves between

---

[1] Sometimes Brooks alleges that he started working on June 5, 2022. *See* dkt. 1, pg. 4. But he (apparently inadvertently) also says he began working for Defendants on June 5, 2023. *Id.* pg. 9, ¶ 11. Defendants cite the latter start date, despite Brooks referencing a few interactions with coworkers in 2022. *See id.* ¶ 12 ("On or around November 2022…"); *id.* pg. 8, ¶ 3 (noting a seventeen-month tenure). The precise range isn't determinative, but regardless the Court accepts Brooks' version as true and ignores minor inconsistencies.

1

different allegedly discriminatory workplace interactions. The Court organizes the allegations chronologically:

Brooks alleges that in November 2022, a white female coworker made offensive comments about Barrack and Michelle Obama and said that Trump was making the country white again. Dkt. 1, pg. 10–11, ¶ 12. The conversation made Brooks "very uncomfortable." *Id.* pg. 10, ¶ 12. He immediately reported the conversation to Defendant Young. *Id.* A few days later, that same coworker told Brooks "my mom don't like blacks." *Id.* ¶ 13. Brooks also reported that conversation to Young, but was dissatisfied with Young's response. *Id.* He then reported the incident to an HR employee, who told Brooks to let his supervisor handle it. *Id.*

In July 2023, Brooks alleges that three of his white coworkers ("Brittany," "Slavica," and "Taylor") agreed not to do work. *Id.* ¶ 14. Taylor left a note for Slavica, instructing her, "Don't wrap save for slaves in a.m."[2] *Id.* Brooks confronted Slavica about the note; she put a piece of gum on the word "slave" and threw it out. *Id.* ¶ 15. Brooks reported the interaction to Young, who opined that Taylor may have incorrectly referred to Slavica. *Id.* Young didn't investigate further. *Id.*

On August 3, 2023, Brooks was given a three-day suspension for yelling at a coworker. *Id.*, pg. 9. That same coworker, at some earlier point, was assigned to a different shift as punishment for yelling at and threatening a supervisor. *Id.* Brooks doesn't allege whether that coworker had a previous incident on his record before the reassignment.

On December 6, 2023, Brooks tried handing-off his radio to coworker Slavica. *Id.*, pg. 8, ¶ 1. Slavica "threw her hands up and back and stated no!" *Id.* ¶ 2. Because of the "past 17 months of abuse," Brooks responded "you are a very disrespectful ol[d] lady, I'm tired of you treating me like I'm filthy and dirty." *Id.* ¶ 3. Young intervened, and Brooks told him that Brooks would report the incident to HR. *Id.* Young responded: "You go to HR you will be giving your job away." *Id.*

Brooks then spoke with Young's supervisor, telling her that Brooks couldn't tolerate Slavica's "psychological harassment." *Id.* ¶ 4. Brooks also told the supervisor that he would go to HR; the supervisor told Brooks to "just let things play itself out." *Id.* Brooks spoke with two individuals in HR; one of them told him to file a written statement and HR would investigate the allegations. *Id.* ¶ 5.

The next morning, on December 7, Brooks received a phone call, informing him that he was terminated effective that day. *Id.* ¶ 6. According to Brooks' retelling, the

---

[2]Brooks attached a photo of the note as an exhibit. *Id.*, Ex. B. The note says "slave," i.e. singular. It's ambiguous whether the "s" is capitalized, though Defendants recount the allegation as "Slave." Defendants' version is more consistent with their argument that the note referred to Slavica. In any event, the Court must accept Brooks' version at this stage.

termination was attributed to violation of PCI's code of conduct barring certain abusive or threatening language and "also" the August 3 incident, because "it's a custom or practice of the Defendant to terminate employees with a second incident in their background." *Id*.

In addition to those specific instances, Brooks alleges that "from the moment [he] started" and despite his experience, he wasn't allowed to speak at meetings or order supplies, like the other employees. *Id*., pg. 10, ¶ 26. According to Brooks, Young also treated him as if he were illiterate or over[ly] aggressive. *Id*.

    b.    *EEOC Charge and Complaint*

On December 13, 2023, Brooks filed a Discrimination Charge with the EEOC. *Id*., pg. 4. The charge named only PCI, not Young. *Id*. Brooks based the discrimination on "race, Black" and "Retaliation." *Id*. He listed the "Date(s) discrimination took place" as "12/07/2023 to 12/07/2023." In the "Particulars" section, he wrote "During my employment, I was subjected to harassment. I complained to Respondent. Subsequently [on December 7] I was discharged." *Id*. The EEOC issued a right to sue notice on December 19, 2023. Brooks brought this suit on March 19, 2024, naming PCI and Young. Dkt. 1. He checked both the "Race" and "Color" discrimination categories in the form complaint. *Id*., pg. 6.

Brooks' Complaint lists two counts, neither of which name the targeted Defendants. The two counts' descriptions also indicate that Brooks raises additional claims. *See id*. pg. 9, ¶ 9; pg. 10, ¶ 27. So, liberally construing the pleadings, the Court assumes that Brooks brings all claims against both Defendants. The Court also reinterprets "Count I: Racial Discrimination and Retaliation" and "Count II: Psychological Harassment and Deliberate [In]difference." Based on the entire Complaint, the Court understands that Brooks brings claims for (1) a Fourteenth Amendment violation, (2) Title VII and § 1981 violations for both racial and color discrimination and retaliation, and (3) creating a hostile work environment.

**Analysis**

    a.    *Improper Service*

Young argues that the Court should dismiss the claims against him because Brooks improperly served him. Young says that service occurred through a PCI security guard, and Brooks didn't disagree in his Response. A party suing in federal court must follow the Federal Rules of Civil Procedure. Rule 4(e) lists the ways to serve an individual (as opposed to a company) like Young: personally deliver the complaint to the individual, leave a copy at his home with a suitable household member (like an

3

adult), or deliver it to an authorized agent. *See* 4(e)(2)(A–C). The security guard wasn't Young's authorized agent, so Brooks doesn't fit into any of those three groups.

The Rules also allow any service that complies with the state in which the federal court sits. 4(e)(1). That's less complicated than it sounds: it just means that if Illinois allows service by email (it doesn't), then this Court also allows email service, even if email service isn't listed in the Rules above. So, the Court checks Illinois service procedures. Mostly mirroring Rule 4(e), 735 ILCS 5/2-203 discusses how to serve an individual. That statute doesn't allow service through a coworker or security guard. *Id.* Because that type of service isn't listed, Brooks' service on Young was improper. *See also Naylor v. Streamwood Behav. Health Sys.*, No. 11 C 50375, 2012 U.S. Dist. LEXIS 162084, at *16 (N.D. Ill. Nov. 13, 2012) (finding service improper where it was made on the director of a corporate facility, not the defendant personally). Without proper service, a court can't exercise personal jurisdiction over a defendant. So, the Court must dismiss the claims against Young without considering their merits.[3] *See Sikhs for Just. v. Badal*, 736 F.3d 743, 751 (7th Cir. 2013) ("For without personal jurisdiction, a court has no authority to adjudicate a case on the merits.").

    b.    *Failure to State a Claim*

Federal Rule of Civil Procedure 8 requires only that a complaint contain a "short and plain statement" establishing the basis for the claim and the Court's jurisdiction. Fed R. Civ. P. 8(a). A plaintiff will survive a Rule 12(b)(6) motion if the plaintiff alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

---

[3]Because Brooks didn't properly serve Young, the Court won't decide whether the claims against Young are sufficient. However, the Court reminds Brooks of a few rules discussed in Defendants' Motion. First, Title VII doesn't permit personal liability. *See Hitesh Shah v. Walmart Stores, Inc.*, No. 3:21-cv-50277, 2022 U.S. Dist. LEXIS 96586, at *12 (N.D. Ill. May 31, 2022); *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494 (7th Cir. 1998). Second, though § 1981 permits personal liability, "[it] cannot be imposed on an individual for a company's violation of § 1981 unless that individual personally participated in the discrimination. *Muhammad v. Univ. of Chicago*, No. 16-CV-09998, 2019 LEXIS 240066, at *8 (N.D. Ill. Mar. 31, 2019) (citing *Hilderbrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003)). Plaintiffs don't need to file an EEOC charge before bringing a § 1981 claim. *Walker v. Abbott Laboratories*, 340 F.3d 471, 474 (7th Cir. 2003).

4

1. Fourteenth Amendment Violation

To the extent Brooks brings a claim for Fourteenth Amendment violations against PCI, it's dismissed because he doesn't allege that the Company is a state actor. *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972) ("[T]he Fourteenth Amendment, unlike the Thirteenth, affords the plaintiff no protection against discrimination in which there is no state involvement of any kind.").[4]

2. Title VII and § 1981

i) Color Discrimination

PCI seeks dismissal of Brooks' color discrimination claim on procedural and substantive grounds. First, it notes that Brooks didn't allege discrimination based on color in his EEOC charge, instead listing only "Race, Black" and "Retaliation." In his Complaint, however, he checked the discrimination based on color box. So, PCI argues, Brooks didn't exhaust his administrative remedies on that claim before bringing this suit. Second, Defendants contends that Brooks alleges insufficient facts to establish a plausible color discrimination claim.

The Court will assume that Brooks' EEOC charge alleged both race and color discrimination claims. However, it dismisses the color discrimination on substantive grounds. A claim of discrimination because of color "arises when the particular hue of the plaintiff's skin is the cause of the discrimination." *Williams v. Illinois Dep't of Transportation*, No. 19 CV 50343, 2020 U.S. Dist. LEXIS 191472, at *3 (N.D. Ill. Dec. 16, 2020) (citations omitted). Nothing in Brooks allegations suggest that his color discrimination claim differs from his race discrimination one. So, the color discrimination claim is duplicative, and the Court dismisses it. *See id.*

ii) Race Discrimination

Though Title VII and § 1981 are distinct claims, *see Walker v. Abbott Laboratories*, 340 F.3d 471, 474 (7th Cir. 2003) (discussing distinctions), the analysis of whether allegations of racial discrimination in the workplace are actionable under either is identical. *Muhammad*, 2019 LEXIS 240066, at *4 (citing *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015)). In essence, both statutes bar employers from taking adverse employment actions based on an employee's race.

To survive a motion to dismiss, a plaintiff must include sufficient factual allegations to support a reasonable inference of discriminatory intent. *Id.* "The allegations can be made quite generally, as the Seventh Circuit has set a low bar for pleading causation in racial discrimination cases." *Muhammad*, 2019 LEXIS 240066, at *4 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)); *see also Miko*

---

[4] This rule would apply to a non-state actor like Young as well.

5

*Thomas v. JBS Green Bay, Inc.*, 2024 U.S. App. LEXIS 28449 (7th Cir. Nov. 8, 2024) ("If [the allegations] are deficient, they can be pared off on summary judgment."). A plaintiff may plead discriminatory intent by alleging that (1) he is a member of protected class, (2) he was subject to an adverse employment act, and (3) similarly-situated persons not in the protected class were treated more favorably. *Martino v. W & S Fin. Grp.*, 715 F.3d 195, 201–02 (7th Cir. 2013).

As this Court has noted more than once, it's not difficult to plead an employment discrimination claim. *Crawford v. DeKalb Cmty. Unit Sch. Dist. 428*, No. 22-cv-50256, 2023 U.S. Dist. LEXIS 39612, at *13-14 (N.D. Ill. Mar. 9, 2023). Brooks easily clears that low hurdle.

Brooks alleges that PCI fired him, at least in part, because he's black. He acknowledges that he yelled at a coworker the day before he was fired. He also concedes that that was his second infraction. He argues, however, that PCI penalized a white coworker less severely for similar behavior. Defendants are correct that Brooks doesn't fully provide his white coworker's disciplinary record or contend with other explanations for the allegedly disparate treatment. But he also didn't need to. Whether PCI treated the two differently and whether such treatment was based on race are both fact questions ill-suited for 12(b)(6) resolution. *See Muhammad*, 2019 LEXIS 240066, at *6 ("Whether a comparator is similarly situated is 'usually a question of fact for the fact-finder and thus an inappropriate ground for dismissal.'") (citing *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)). So, the Court won't dismiss the § 1981 and Title VII claims for race discrimination against PCI.

        iii)     Retaliation

A plaintiff can bring a retaliation claim under § 1981, *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012), or Title VII. 42 U.S.C. § 2000e–3(a) (making it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]"). The methods of proof and substantive standards are the same. *Smith*, 681 F.3d at 896. A plaintiff may plead a retaliation claim directly or indirectly. *Id.*

Brooks provides few details on how PCI retaliated against him. However, he's not required to prove a prima facie claim at this stage; he only needs to plead facts to create an inference of a plausible claim. *See Vega v. Chicago Park Dist.*, 958 F. Supp. 2d 943, 955 (N.D. Ill. 2013). Brooks alleges that he repeatedly complained about his coworkers' offensive comments. He also claims that after the yelling incident Brooks told Young he planned to speak with HR, Young responded "you go to HR you will be giving your job away." Brooks spoke with HR and PCI fired him the next day. The Court must take Brooks' allegations as true. In doing so, it finds that PCI hasn't demonstrated that Brooks' retaliation claims are legally insufficient.

6

### 3) Hostile Work Environment

A hostile work environment claim requires a plaintiff to show that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Duniya v. Power*, 2023 U.S. Dist. LEXIS 58045, *2 (N.D. Ill. Apr. 3, 2023)) (citing *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015)). The harassment must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive relationship." *Duniya*, 2023 U.S. Dist. LEXIS 58045, at *10.

Brooks alleges that he worked at PCI for seventeen months. In that time he identifies two specific incidents in which his coworkers made racist remarks. He alleges that in November 2022, when he joined the company, a coworker said Trump would make America white again and that the coworker's mother didn't like black people. Roughly nine months later, in July 2023, Brooks says that his coworker left a note with the word "slave" on it. Brooks contends that the note referred to him. In addition to those specifics, Brooks alleges that Young generally wouldn't allow Brooks to order supplies and treated him as if he were "illiterate or overaggressive."

On these allegations, the Court can't infer a plausible hostile work environment claim. It's true that a "workplace need not be "hellish," *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017), and that Brooks recounts distressing experiences. But as PCI argues, Brooks must allege more, even at the 12(b)(6) stage. *See Duniya*, 2023 U.S. Dist. LEXIS 58045, at *11–12 (collecting dismissed cases); *id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("Simple teasing offhand comments, and isolated incidents (unless extremely serious), will not amount to discriminatory changes in the terms and conditions of employment.")); *see also Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) (affirming summary judgment in a sexual harassment case and noting "employers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries."). Because the few isolated comments don't rise to that level, the Court dismisses this claim against PCI without prejudice.

**Conclusion**

Brooks improperly served Young, so all the claims against him are dismissed. Brooks may refile a complaint and properly serve Young, although the Court reminds Brooks to carefully consider Young's substantive objections.

Regarding PCI, the Fourteenth Amendment claim is dismissed with prejudice. The color discrimination and hostile workplace environment claims are dismissed without

prejudice. Brooks may proceed against PCI on the Title VII and § 1981 claims for race discrimination and retaliation. Brooks is given until December 23, 2024 to file an amended complaint against PCI. If no amended complaint is filed by that date, the dismissal will automatically convert to one with prejudice. That automatic conversion order applies only to claims against PCI, not Young.

Entered: November 21, 2024        By: _____

                                                        Iain D. Johnston
                                                        U.S. District Judge